Because recharacterization is essentially an objection to the allowance of a claim, the court finds the Advisory Committee note to Fed. R. Bankr. P. 3007 instructive regarding who has the authority to pursue a claim objection:
While the debtor's other creditors may make objections to the allowance of a claim, the demands of orderly and expeditious administration have led to a recognition that the right to object is generally exercised by the trustee. Pursuant to § 502(a) of the Code, however, any party in interest may object to a claim. But under § 704 the trustee, if any purpose would be served thereby, has the duty to examine proofs of claim and object to improper claims.
Id.
As the Advisory Committee note clarifies, a creditor like Elswick has the statutory standing to object to a proof of claim. The issue to be resolved is not one of standing; rather, it is who should be allowed to prosecute the objection to a proof of claim based on concerns of an orderly and expeditious administration of the Debtor's estate.
In other cases that address the authority of a creditor to assert a recharacterization claim, sometimes the issue is framed in the context of a creditor's committee seeking a grant of derivative standing from the court, In re Sabine Oil & Gas Corp. , 547 B.R. 503, 566 (Bankr. S.D.N.Y. 2016) ; sometimes it is an objection to standing that has been overruled when a chapter trustee is joined as a party plaintiff, United States v. State St. Bank & Trust Co. , 520 B.R. 29, 72 (Bankr. D. Del. 2014), and sometimes the court recognizes that the creditor had standing to pursue the claim on its own.
*223 Citizens Bank & Trust Co. v. Riederer (In re Brooke Capital Corp.) , Adv. No. 08-6132, 2011 WL 204278, at *6, 2011 Bankr. LEXIS 210, at *22 (Bankr. D. Kan. 2011) ("The Court believes in priority disputes among secured creditors, each creditor can ordinarily question any other creditor's assertion of a perfected security interest, and [the court] will not deny Citizens' recharacterization claim on this ground."). See also Jo Ann J. Brighton, Feature: Is It a Capital Contribution or a Loan?, Update: Recharacterization--Practical Pointers in an Evolving Arena , 22-10 ABIJ 18, 67 (Dec. 2003 - Jan. 2004) ("[T]he question seems open as to who has proper standing to bring such actions ... [p]ractically speaking ... creditors' committees are the ones raising the issues and bringing the actions .... There is also room for the possibility that a single creditor may have standing ....").
Here, the Debtor's case is in Chapter 11: there is no trustee, no creditor's committee, and the Debtor is not a party to this adversary proceeding. To date, however, the Debtor has not specifically objected to Elswick seeking recharacterization of Comm2013's proof of claim; complained that Elswick is interfering with the bankruptcy estate's process for objecting to claims; and has not independently asserted an objection to claim, or cause of action, that specifically mentions recharacterization.
Therefore, at this stage of the litigation the court will deny Comm2013's motion to dismiss Elswick's recharacterization claim on grounds of standing and will direct Elswick to file a motion in the Debtor's main bankruptcy case that requests authority from the court, on notice to the Debtor, to pursue its recharacterization claim in this adversary proceeding.
2. Elswick's Standing to Pursue Equitable Subordination
"Subordination is a remedy in which the order of payment rather than the existence of the debt is in issue." 4 Collier on Bankruptcy ¶ 510.02[1] (2018). Subordination is often based on creditor misconduct such as fraud or usury. Id. Subordination is remedial and requires a showing that: (1) the claimant engaged in inequitable conduct; (2) that conduct injured other creditors; and (3) subordination is consistent with other bankruptcy law. In re ASI Reactivation, Inc. , 934 F.2d 1315, 1320 (4th Cir. 1991).
Elswick has constitutional standing to request equitable subordination of Comm2013 proof of claim because: (1) Elswick has asserted an unsecured claim against the Debtor's bankruptcy estate and the payment on that claim may be non-existent or reduced based on the existence of Comm2013's alleged secured claim against the Debtor's bankruptcy estate; (2) Elswick asserts that its injury - receiving less than a 100% payment from the bankruptcy estate - is directly traceable to Comm2013's conduct regarding its failure to fund repairs to a culvert under the only bridge access to The Crossings Mall, and (3) the injury is subject to redress by the court because the court has the power to subordinate Comm2013 claim under 11 U.S.C. § 510(c).
Similarly, Elswick has prudential standing to assert a claim for equitable subordination because Elswick is asserting rights that are associated with its direct damages from the loss of access to The Crossings Mall. The bankruptcy court has the power to subordinate Comm2013's proof of claim so that other creditors, like Elswick, can receive a greater distribution from the bankruptcy estate.
*224 Regarding statutory standing, the right to bring a claim for equitable subordination is governed by 11 U.S.C. § 510(c) and Fed. R. Bankr. P. 7001(8). Section 510 of the Bankruptcy Code does not specify who has the right to assert a claim for equitable subordination. Under 11 U.S.C. § 1109(b), a creditor is a party in interest that may raise and appear on any issue, however, under §§ 1107(a) and 1106, a Chapter 11 debtor in possession has the right to control property of the bankruptcy estate, which includes causes of action. § 541(a)(1). The general right to be heard in § 1109 does not allow "a creditor to pursue substantive remedies that other Code provisions make available only to other specific parties." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A. , 530 U.S. 1, 8, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000).
To avoid hijacking a cause of action that belongs to a bankruptcy estate, the general rule is that a creditor may assert rights that are personal to the creditor but not matters that are generalized for the bankruptcy estate. E.g. , In re John Stewart Custom Woodworking, Inc. , Case No. 16-bk-816, 2017 WL 3098103, at *2, 2017 Bankr. LEXIS 2014 at *7 (Bankr. N.D.W. Va. July 20, 2017) ("When the resulting injury is specific to an individual creditor or group of creditors, however, the injured creditor or creditors are the exclusive owners of the claim [and it is not under the exclusive control of the bankruptcy trustee]."); see also In re Seven Seas Petroleum , 522 F.3d 575, 584 (5th Cir. 2008) ("If a claim belongs to the estate, then the bankruptcy trustee has exclusive standing to assert it."); St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc. , 884 F.2d 688, 701 (2d Cir. 1989) ("If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.").
Indicia of a personal right to assert a claim for equitable subordination includes seeking only to subordinate the defendant's claim to the plaintiff's claim rather than the claims of all creditors of the bankruptcy estate. NM Enters. v. Harrington (In re Flying Star Cafes, Inc.) , 568 B.R. 129, 135 (Bankr. D.N.M. 2017) ; In re Elrod Holdings Corp. , 392 B.R. 110, 115 (Bankr. D. Del. 2008). This requires a particularized injury that is different from the harm suffered by creditors generally. For example, in the case of Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax Fund, L.P. (In re AppliedTheory Corp.) , 493 F.3d 82, 87 (2d 2007), the court denied standing to a creditor's committee to assert a claim for equitable subordination on the grounds that the creditor's committee had a close identity of interest with the debtor and the committee was not itself a creditor that could allege a particularized injury. See also St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc. , 884 F.2d 688, 701 (2d Cir.1989) ("If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."). As recognized by the Court of Appeals for the Seventh Circuit Court, however, "when a party seeks equitable subordination, it is not acting in the interests of all the unsecured creditors ... individual creditors have an interest in subordination separate and apart from the interests of the estate as a whole [and] should have an opportunity to pursue its separate interest."
*225 In re Vitreous Steel Products Co. , 911 F.2d 1223, 1231 (7th Cir. 1990). "Even where a Trustee brings an action against a creditor based on equitable subordination, some other individual creditor may have an interest uniquely affected by that alleged inequitable conduct ... and therefore have standing separate from the trustee." Black Palm Dev. Corp. v. Barlage , No. 1:09-CV-220, 2011 WL 4858420, at *4, 2011 U.S. Dist. LEXIS 118734 at *11-12 (W.D.N.C. Oct. 13, 2011).
In this case, to show a particularized injury, Elswick asserts that it has a lease with the Debtor that required it to pay amounts in addition to the minimum rent for the maintenance of the common areas of The Crossings Mall. Comm2013 controlled how the rents were distributed. When the Debtor's management company made a request for funds to repair a culvert in January 2016, Comm2013 did not fund that request. When a subsequent flood washed away the only bridge access to The Crossings Mall, Elswick asserts that it suffered a particularized injury because it suffered business damages as a result of the flood and collecting a monthly amount from it for common area maintenance and then failing to use those funds for their promised purpose is a violation of its individual lease agreement. Elswick also asserts that Comm2013 had independent duties to all customers, employees, licensees, and invitees located at the Crossings Mall; however, in its prayer for relief it only requests that Comm2013's loan be subordinated to its unsecured claims.
In the Debtor's bankruptcy case, in addition to the claims scheduled by the Debtor, eighty proofs of claim have been filed, most of which are related to damages sustained after the loss of bridge access to The Crossings Mall. There appear to be a few claims unrelated to the loss of the bridge, such as a tax claim, and an unpaid water bill.
Also, the Debtor has already filed its own objection to Comm2013's proof of claim asserting, among other things, that Comm2013's claim should be equitably subordinated. The grounds alleged by the Debtor to support its equitable subordination argument are substantially similar to the grounds asserted by Elswick. More specifically, the Debtor alleges that Comm2013 failed in its duty to authorize funding to repair the culvert under the bridge and as a result of its alleged inequitable conduct, Comm2013's claim "should be equitably subordinated to every other claim in the case." (Case No. 17-bk-57, Document No. 538, ¶¶ 48-52). In addition, the Debtor has asserted causes of action against Comm2013 in its Third Party Complaint and Second Amended Counterclaim whereby the Debtor alleges causes of action for breach of contract, breach of duty of good faith and fair dealing, breach of fiduciary duty, and tortious interference with business relationship - all of which arise out of the same operative facts that give rise to Elswick's claim for equitable subordination.
Of course, the Debtor is not a party to this adversary proceeding and therefore has not had an opportunity to be heard on whether Elswick should be allowed to proceed on its claim for equitable subordination, or what kind of case management, if any, the Debtor desires in the administration of its estate.[6] Consequently, the court will deny Comm2013's motion to dismiss Elswick's claim for equitable subordination on grounds of standing, and will *226 direct Elswick to file a motion in the Debtor's main bankruptcy case seeking authority from the court, on notice to the Debtor, to pursue its claim for equitable subordination in this adversary proceeding.
IV. ORDER
For the reasons set forth above, it is
ORDERED that the Motion to Dismiss filed by Comm2013 on July 17, 2018 (Document No. 19), be and hereby is DENIED WITHOUT PREJUDICE. It is
FURTHER ORDERED that within 30 days of entry of this Order, Elswick must file a motion in the Debtor's main bankruptcy case that requests authority for it to pursue its claims for recharacterization and equitable subordination against Comm2013. Elswick shall serve the motion on the Debtor as a contested matter and the Bankruptcy Clerk will issue a notice of the time to respond to the motion. The failure of Elswick to timely file the motion within 30 days of the entry of this Order may result in the dismissal of Elswick's adversary complaint, without prejudice, without further notice or opportunity for a hearing.
SO ORDERED.

Under certain circumstances, a creditor may be granted derivative standing to pursue a cause of action that is property of the Debtor's estate if it can show the estate's refusal to bring a colorable claim and it obtains leave to sue from the bankruptcy court. Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery , 330 F.3d 548, (3d Cir. 2003). For its part, the Court of Appeals for the Fourth Circuit has not expressly determined if such derivative standing exists. Scott v. Nat'l Century Fin. Enters. (In re Balt. Emergency Servs. II) , 432 F.3d 557, 560-61 (4th Cir. 2005).